STATE OF VERMONT

ENVIRONMENTAL COURT

|  |  |
|---|---|
| In re: Howard Center for Human Services<br>    Window Replacement Project<br>    (Appeal of Howard Center<br>        for Human Services, Inc.) | Docket No. 145-6-06 Vtec |

<u>Decision and Order on Cross-Motions for Partial Summary Judgment</u>

Appellant-Applicant (Applicant) Howard Center for Human Services, Inc. appealed from a decision of the Development Review Board (DRB) of the City of Burlington denying Applicant's application to replace windows in the building at 45-47 Clarke[1] Street in Burlington. Applicant is represented by Franklin Kochman, Esq. and the City of Burlington is represented by Eugene Bergman, Esq. The parties have moved for summary judgment on Question 1 of the Statement of Questions: whether the proposed window replacement is subject to design review pursuant to Article 6 of the Burlington Zoning Ordinance. The following facts are undisputed unless otherwise noted.

Applicant applied for a Certificate of Appropriateness to replace the primary window sashes, in the building's wooden, double-hung windows, with vinyl inserts. The proposal does not involve replacing the exterior window frames or surrounding decorative woodwork; it involves replacing the glass with thermal glass, framed by vinyl sashes. This motion for summary judgment does not relate to the merits of this replacement, or whether it has been done in other buildings along this street, or whether it should or should not be

---

[1] All the documents refer to the spelling as "Clarke" Street with the exception of the 1973 maps of the city's land use areas, which spells it as "Clark" Street; however, the parties do not dispute its location.

approved for this building.

The parties do not dispute that the building was constructed in 1887 for a silver plater named David Mitchell, in a typical Eastlake style, similar to other Italianate houses in Burlington, and that, among its other features, it has decorative window architraves. The building entrance was altered in about 1975 when the building was converted into an architect's office.

Applicant contests whether the building is located in a Design Review zoning district, and contests whether the proposed window replacement requires design review from the DRB under §§6.1.3 and 6.1.4. The City argues that, as well as being in a Design Review overlay district under §3.2.3(a), the building is an historic building which requires design review under §3.2.3(b).

Design Review overlay district

Applicant first argues that the 45-47 Clarke Street property is not in a Design Review overlay district, and therefore should not have been subject to design review for the window replacement project. Clarke Street is only one block long, bounded by Pearl Street on its south end and by Grant Street on its north end.

Section 3.2.3 of the Burlington Zoning Ordinance establishes the Design Review overlay districts to "preserve, protect and enhance those areas within the city containing structures of historical, architectural or cultural merit." The Design Review overlay districts established in §3.2.3 are distinct from the different "Historic Buildings" overlay district established in §3.2.4.

The Design Review overlay districts designated in the four subsections of §3.2.3 are, in reverse order: in subsection (d), the entire RCO, WRL, WFC-N, C, GC, and E zoning districts (not applicable to this property); in subsection (c), certain listed major street corridors (not applicable to this property); in subsection (b), historic buildings (regardless

2

of location); and, in subsection (a), the "Waterfront core, Regional Core and Inner City" areas, "as delineated in the 1973 Municipal Development Plan for the City of Burlington."

In January of 1973 the City Council adopted a document entitled "The Official Comprehensive Master Plan" (the 1973 Plan), and referred to in its text and in the adoption resolution as the "Comprehensive Plan" or the "Comprehensive Master Plan." The adoption resolution states that the 1973 Plan was adopted "specifically in accordance with the provisions of 24 V.S.A.[] Section 4385," codified under subchapter 5 of 24 V.S.A. Chapter 117. Subchapter 5 is entitled "Municipal Development Plan;" the subchapter generally uses the term "plan," which in turn is defined in 24 V.S.A. §4303(18) to mean "a municipal plan adopted under section 4385."

Applicant argues that sufficient ambiguity is raised by the difference between the title of the 1973 Plan and its reference in the Ordinance to exempt Applicant's building from the requirement of undergoing Design Review. However, despite the fact that the title of the 1973 Plan is "Official Comprehensive Master" Plan rather than "Municipal Development" Plan, there is no ambiguity that the 1973 Municipal Development Plan cited in §3.2.3(a) of the Ordinance[2] is the Comprehensive Master Plan adopted in 1973. Applicant does not claim that any other municipal plan was adopted in 1973. Moreover, the 1973 Plan was adopted specifically under the provisions of the state enabling act

---

[2] Section 1.1.6 of the Ordinance also expressly states that the Ordinance was adopted to "implement the planning policies adopted for the city as reflected in the Municipal Development Plan and other planning documents." Thus, even if the 1973 Comprehensive Master Plan were not the "Municipal Development Plan" referred to in §3.2.3(a) of the Ordinance, it would be an "other planning document" which the Ordinance was adopted to implement. In a paragraph entitled "Inner City Residential Area Policies," the 1973 Plan states that the "city shall require appropriate design . . . through design review throughout the Inner City Area." The Court's "paramount function" in interpreting an ordinance is to give effect to such legislative intent." Appeal of Weeks, 167 Vt. 551, 554 (1998).

entitled "Municipal Development Plan." There is therefore no ambiguity regarding which plan is referenced in the Ordinance that would require resort to the principles of statutory construction.

Applicant next argues that the "Inner City" area referenced in §3.2.3(a) of the Ordinance is insufficiently defined in the 1973 Plan to determine whether 45-47 Clarke Street is located within the "Inner City" area. The 1973 Plan designated several "land use areas" within the City. One of the land use "areas" designated in the 1973 Plan is the "Inner City Residential Area," which is defined in the 1973 Plan as having two sections, one to the north of the Regional Core and one to its south. The northerly section is "[b]ounded by the Waterfront Area, Central Vermont Railroad line and North Willard Street (as extended northerly) to the north of the Regional Core." The portion of the Waterfront Area pertinent to the northerly Inner City area is described in the 1973 Plan as being bounded on the east by North Avenue and Battery Street. The Regional Core area is described in the 1973 Plan as being bounded on the north by Pearl Street. Applicant's property at 45-47 Clarke Street, and the entirety of Clarke Street, is located north of Pearl Street, west of North Willard Street, south of the Central Vermont Railroad line and east of Battery Street and North Avenue. Applicant's property is therefore located within the "Inner City Residential Area" described in the text of the 1973 Plan, even if there were no map appended to that Plan.

Moreover, the map attached to the 1973 Plan sufficiently establishes the boundaries of each land use area referenced in the 1973 Plan to determine that the entirety of Clarke St. is within the northerly of the two "Inner City" land use areas shown on the 1973 "Comprehensive Master Plan Land Use Area Map." The terms "Inner City Residential" area and "Inner City" area are used interchangeably in the 1973 Plan. Applicant does not claim that any other "Inner City" area is defined in the 1973 Plan, other than the "Inner City Residential Area." There is therefore no ambiguity regarding which Inner City area is

4

referenced in the Ordinance, or the boundaries of that area, that would require resort to the principles of statutory construction.

Historical Status of Applicant's building

The City argues that even if there were ambiguity in the boundaries of the Inner City area, Applicant's property would require design review in any event as an historic building under §3.2.3(b)[3], as it is a building listed on the Vermont Register of Historic Resources. Although material facts appear to be in dispute regarding whether or the degree to which past changes to the building may have affected its historic qualities, the building remains an historic building subject to design review under §3.2.3(b) as well as under §3.2.3(a).

Substantial Alteration

Applicant argues that, even if the building is within the Design Review overlay district, the window replacement project does not constitute development or a substantial alteration for which a Certificate of Appropriateness or DRB approval is required.

First, window replacement that alters trim details or otherwise changes the exterior appearance of a building is specifically listed in §4.1.3(a) as a type of "land development" requiring a zoning permit. In a Design Review district, §6.1.4 requires a Certificate of Appropriateness to be obtained from the DRB before "the commencement of any development or activity."

Moreover, the proposed window replacement constitutes "restoration" of the building, requiring DRB approval of the plan under §6.1.3, regardless of whether it

---

[3] This is distinct from those historic buildings within the "Historic Buildings" overlay district established in §3.2.4, which references Article 8 of the Ordinance.

qualifies as substantial alteration of the building.

The proposed window replacement constitutes "alteration" of the building, as that term is defined in §30.1.2. Alteration means:

> the rearrangement of interior space, including the addition of walls, halls, steps, elevators, escalators, the rearrangement of the exterior bearing walls, including new doors, wind exits[4] or facades; but not including ordinary maintenance or repairs.

Even if the curious phrase "wind exits" is not read to mean "windows, exits," because the definition is by a non-exclusive list of examples, we may interpret the examples to include "windows" as other items within the class of the included terms, that is, openings in the exterior facade of the building.

More importantly, the proposed window replacement does not qualify as "ordinary maintenance or repair" of the windows as it is excluded from the definition of the exemption in §6.1.9. The "ordinary maintenance or repair" of any exterior architectural feature, such as a window, is only exempt if it "does not involve a change in design, material, color or the outward appearance of the feature," and even then, only if the total dollar value for all labor and materials in the project is less than $5,000. In the present project, although the parties dispute whether the window replacement project will involve a change of color, design, or outward appearance, there is no question that it involves a change of material from wood to vinyl, and therefore does not fall within the exemption. Moreover, the cost estimate provided by Applicant on the application was $17,385, above the $5,000 exemption limit. This limit also provides some guidance to the Court in interpreting the extent of alteration that should be considered to be substantial. In the

---

[4] Neither the Ordinance nor commonly-available dictionaries define the term "wind exits," suggesting that a typographical error may have crept into this section of the Ordinance; however, the parties did not supply any earlier edition of the Ordinance that could illuminate whether this list originally read "new doors, wind<u>ows,</u> exits or facades."

present case, the replacement of all the window glass and window sashes in the building qualifies as "substantially alter[ing]" the building sufficiently to require DRB approval under §6.1.3, as well as under §6.1.4.

Accordingly, based on the foregoing, it is hereby ORDERED and ADJUDGED that Appellant-Applicant's Motion for Summary Judgment is DENIED and summary judgment is GRANTED in favor of the City on Question 1 of the Statement of Questions. A telephone conference has been scheduled (see enclosed notice) to discuss setting the merits of the remainder of the appeal[5] for trial.

Done at Berlin, Vermont, this 16th day of March, 2007.

_____
Merideth Wright
Environmental Judge

_____

[5] The City also argued that the property also should have been considered for conditional use review as a change from the former non-conforming office use to a medical office use. Such an application was not made by Appellant-Applicant and is not before the Court in this appeal, nor is any notice of violation or enforcement action involved in this appeal. Please be prepared to discuss this issue at the conference. V.R.E.C.P. 2(b).

7